**ASSOCIATION OF PROFESSIONAL EN-
GINEERING PERSONNEL, Plaintiff,**

v.

**RADIO CORPORATION OF AMERICA,
Defendant.**

Civ. No. 112-60.

United States District Court
D. New Jersey.

May 5, 1960.

DuBois, Maiale & DuBois, by Madison S. DuBois, Camden, N. J., Kleinbard, Bell & Brecker, by Arthur Keyser, Philadelphia, Pa., of counsel, for plaintiff.

Richman & Berry, Camden, N. J., by Grover C. Richman, Jr., Camden, N. J., Schnader, Harrison, Segal & Lewis, by Frank Abbott, Philadelphia, Pa., of counsel, for defendant.

MADDEN, District Judge.

This action is brought in this Court under provisions of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a).

Plaintiff, Association of Professional Engineering Personnel, a labor union, here seeks to enjoin the defendant, Radio Corporation of America, from using a merit rating plan dated November 15, 1959 and to compel the defendant to continue in effect a rating plan dated October 1, 1959. The union, as an alternative remedy, seeks to have specific performance of the provisions of the colective bargaining agreement requiring arbitration of grievances.

Since the decision of the Supreme Court in Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, there can be no doubt concerning the jurisdiction of this Court to entertain an action for specific performance of a collective bargaining agreement; see, Independent Petroleum Workers of New Jersey v. Esso Standard Oil Co., 3 Cir., 1956, 235 F.2d 401.

Suit in this matter was started February 4, 1960, by the filing of a complaint and issuance of an order to show cause why a temporary restraint should not be ordered, returnable February 19, 1960. Because of engagement of counsel in trial before this Court, at Trenton, the matter was continued until March 11, 1960. After hearing argument by counsel in the matter the Court discussed various phases of the matter and adjourned the hearing to March 25 to give opportunity to counsel to meet those matters discussed by the Court in its comments.

In view of the fact that the basic contract in existence between the parties hereto expires July 1, 1960, and expeditious hearing seemed most necessary, the Court communicated with counsel and by their agreement postponed the hearing on the return of the order to show cause and set the matter down for final hearing with a companion matter, Civil 786–58, on April 18 and 19, 1960, each matter to be heard separately.

After full hearing and because of the present exigency the Court will dispose of the present or later matter instead of following its usual course of disposing of the oldest matters first.

For many years the plaintiff, Association of Professional Engineering Personnel, an unincorporated organization, has represented a considerable number of the engineers employed by the defendant, Radio Corporation of America, in their respective labor relations and contract negotiations. For many years past the defendant has had a system of reviewing the employment conduct of its employees for the purpose of granting merit increases. Until 1957 the plaintiff-union has had little or no say in the method employed by the defendant in merit rating review.

On July 21, 1958, the defendant-company for the first time, entered into an agreement with plaintiff-union, whereby it agreed to establish a plan to be used as a basis in granting individual merit increases. This plan became effective February 1, 1959.

On July 2, 1959 (at or about the time the parties had concluded negotiations on their Master Agreement controlling their relations between July 2, 1959 and July 1, 1960) the defendant-company entered into another agreement to continue in effect the plan established as a result of the July 21, 1958 agreement, and, likewise, to consider modifications and revision of the same to be effective October 1, 1959.

On or about October 14, 1959, the defendant-company presented to the union the merit rating plan effective October 1 1959.

In the meantime, an individual member of plaintiff-union, being dissatisfied with the results of his individual merit review rating, filed a grievance, which grievance went to arbitration in accordance with the Master Agreement. The record is silent as to when such arbitration hearings were held, but, on October 9, 1959, the arbitrator filed his award wherein he held: "The Engineer's Performance Review rating * * * is procedurally defective * * * and it is accordingly set aside." The record is, likewise, silent as to when the parties received notice or copies of the arbitrator's findings.

Thereafter, and on or about December 1, 1959, a new plan was prepared by the defendant and delivered to plaintiff to be effective as of November 15, 1959. The plaintiff-union thereafter advised the defendant-company that it did not accept the revised plan or recognize the validity of any plan other than the plan of October 1, 1959.

On December 16, 1959, a written grievance was filed by the plaintiff-union with the defendant-company alleging that the company had no authority under the agreements in existence between the union and the company to make the revision to the plan of October 1, 1959, without the consent of the plaintiff-union. The company adopted the position that the matter was not one for grievance or arbitration and refused to participate in arbitrating the matter, whereupon the plaintiff-union instituted this suit. In the prayers of its complaint the plaintiff seeks a preliminary and permanent injunction restraining the defendant-company from using any plan other than the plan of October 1, 1959, and directing the defendant to use such plan and discontinue the use of the November 15, 1959 plan, or, for an order directing the defendant-company to proceed with arbitration of the grievance filed on December 16, 1959.

This matter was tried principally on the pleadings and affidavits, together with various exhibits offered by the parties and the testimony of one witness produced by plaintiff, the Executive Secretary of plaintiff.

After a review of the record before it, the Court is convinced that the action must be dismissed for the following reasons:

First: In the contract to establish a merit rating plan the defendant-company reserved completely the unilateral right to revise and modify the plan from time to time and the plaintiff-union could, at best, only make suggestions, which after consideration the company could accept, modify or reject.

Second: There is no showing by plaintiff-union that the November 15, 1959 Revision of the Plan damaged any of its members or the union or that there was a probability that it would have a detrimental effect on any of its members or the union.

Third: The grievance dated December 16, 1959, filed by the plaintiff-union with the company, is not under the provisions of the contract arbitrable.

Speaking of intention of the parties to a labor contract, Judge Aldrich, U.S. D.J., District of Mass., in Local 205, etc. v. General Electric Co., 172 F.Supp. 53, 56, said:

"It is sometimes said that collective bargaining agreements are not like other contracts, and are to be differently interpreted. There is a certain basis for this, in that such agreements, while limited in length and language, must cover, both physically and conceptionally, very wide bounds. Nevertheless, the fact remains that such agreements are contracts, and are often highly developed and lengthily negotiated against a background of experience. While a court should be prepared to be less than legalistic, I do not think any court can be expected to adopt an entirely different interpretive approach just because a contract is labeled 'collective bargaining agreement.' What the court should attempt to do, as in all other instances, is to put itself in the supposed position of the

parties so far as possible, in order to determine what they intended, or would have intended, and in so doing should recognize that parties to one type of agreement have different problems, and perhaps think differently, than parties to some other type of agreement. In this regard it seems to me the most significant possible difference between a collective bargaining agreement and other contracts is the fact that of necessity every future situation cannot be provided for. Hence amplification of expressed provisions may more readily be undertaken by implication than in other more limited and tightly circumscribed situations."

■ There are many things that illustrate that the right to revise the plan was a unilateral right, but, in the main, it is felt that is specifically spelled out by the agreements themselves dated July 21, 1958 and July 2, 1959, respectively.

The July 21, 1958 agreement, among other things, provided:

"The Company will develop a merit review rating plan by October 1, 1958. A copy of this plan will be given to the Association and earnest consideration will be given by the Company to any constructive suggestions the Association may have. Pilot studies of this plan will be conducted between October 1, 1958 and February 1, 1959. On February 1, 1959 a merit review rating plan will become effective for the determination of individual merit increases to be granted on and after that date. This plan will be established by the Company and its provisions will not be subject to collective bargaining."

And further:

"When the Company believes consideration should be given to the general business conditions affecting RCA in arriving at the amount of individual merit increases, the Association shall be given access to the information upon which the Company is basing their proposed action and the matter shall be fully discussed with APEP."

The July 2, 1959 agreement, among other things, provided:

"This plan, which resulted from the letter agreement between the parties, dated July 21, 1958, will be continued in effect and earnest consideration will be given by the Company to any constructive suggestions the Association may have concerning it."

And further (the same as the 1958 agreement):

"When the Company believes consideration should be given to the general business conditions affecting RCA in arriving at the amount of individual merit increases, the Association shall be given access to the information upon which the Company is basing their proposed action and the matter shall be fully discussed with APEP."

And further:

"The Company intends to make certain changes in the Plan for the purpose of improving it and these changes will be completed so that the Plan as so revised will become effective on October 1, 1959, for the determination of merit increases to be granted on and after that date."

These agreements constitute the basis for the adoption of such a plan, and, in the Court's estimation, specifically gave to the company alone the right to prepare, adopt and put into effect such plan. The only right the Court finds in the plaintiff-union is to make suggestions regarding the plan and its modifications or revisions, together with safeguarding the enforcement of the plan while it is in effect as it is applied to each individual member.

If this opinion needs to be buttressed then it may be found in certain publications of the plaintiff introduced in evidence by defendant. Quotes from some are, as follows:

APEP Bulletin, June 2, 1959, Exhibit D-1.

"The intent is simply to enable your Association to monitor the actual application of this new Company plan for its impact on you * * *."

APEP Bulletin, March 19, 1959, Exhibit D-2.

"The Merit (?) Plan is above all *not* an APEP plan—it is unilaterally applied and monitored by the Company."

APEP Bulletin, February 19, 1959, Exhibit D-4.

"Failure of the Company to provide information for items A and B makes it impossible for APEP to monitor the Company merit review plan."

APEP Bulletin, March 10, 1959, Exhibit D-5.

"At the present time APEP cannot bring direct pressures (other than moral) on the Company to effect changes in this plan."

These statements of the union representatives indicate their view that the plan was strictly a company plan.

As the Court understands the theory of the plaintiff's case, it is that while it was up to the Company in a unilateral fashion to establish a plan, once it established a plan for operation, effective October 1, 1959, it could not thereafter alter or revise such plan without consent of the union and it would continue in force for the remainder of the contract. The Court cannot accept this theory because it seems implicit that the company while it agreed to adopt a plan had the unilateral right as to what the plan would provide and, likewise, had the same right to modify or revise it from time to time.

As pointed out hereinbefore, the agreement of July 2, 1959, among other things, states:

"The Company intends to make certain changes in the Plan for the purpose of improving it and these changes will be completed so that the Plan as so revised will become effective on October 1, 1959, for the determination of merit increases to be granted on and after that date."

Further, the October 1, 1959 plan itself stated (Chapter IV):

"It is recognized that changes in some aspects of the plan may be desirable as operating experience is gained with the plan."

And further:

"Action to modify any parts of the Plan will be coordinated by the Vice President, Product Engineering and Director of Personnel, R.C.A. Staff. Any changes will be supplied as a supplement to this handbook."

After the company adopted the October 1, 1959 Plan, conferences regarding the same were held between representatives of the plaintiff-union and the company regarding it. At one of these the union, through its representatives, suggested that the plan be revised or modified in certain respects, namely, to clarify ratings for engineers on loan or engineers who were transferred or whose supervisors were transferred. A change was made along these lines and is found in the November 15th plan.

The testimony of the sole witness, the Executive Secretary of the union, seemed at variance with the plaintiff's theory of the case. This was to the effect that it was the union's position that as a result of an oral agreement between representatives of both sides in 1958 in the Federal Mediator's Office in Philadelphia, prior to July 21, 1959, no plan would be operative unless agreed to by the union. This testimony was allegedly offered to assist the Court in interpreting the written contract. The Court cannot accept this for it seems clear that it is an attempt on the part of the witness to vary the terms of a written instrument by parole testimony.

■ It has become elementary when parties have merged all prior negotiations and agreements in a writing, intending to make that the repository of their final understanding and such writ-

ing clearly demonstrates the intentions of the parties, evidence of prior negotiations and agreements tending to vary the terms of such writing will not be received.

We come then to the next reason assigned hereinbefore, namely: No damage has been shown by plaintiff to warrant the issuance of the injunctive processes of the Court.

It seems clear that in the arbitrator's award in the Smith case, the plan of February 1, 1959 was procedurally lacking in covering a situation like Smith's where he was the only engineer working under the merit reviewing supervisor Wolf. In the November 15, 1959 Plan, the company provided that the rater would use what general knowledge he possessed regarding engineers, while in the October 1, 1959 Plan the rater was by inference limited in his merit rating to his observations of the engineers under him.

This is exhibited in the following language:

"The rater obtains and reviews data on the performance of his engineers. His judgment must be based on observations of performance."

The November 15, 1959 Plan provides (Chapter III):

"The rater obtains and reviews data on the performance of his engineers. In making these ratings his judgment is based on observations of performance. Raters will use any knowledge which they have of the performance of other engineers in making their judgments about an engineer."

■ The record is absolutely devoid of any evidence that this modification will actually or even probably result in damage to the plaintiff-union or any substantial number of its members. The Court can see how such a change giving the rater the right of making such a comparison would, possibly, be injurious to an individual engineer, but, at the same time, the Court can see possible benefits resulting by such a comparison.

The most that can be said for the plaintiff's position is that in the exercise of its judgment it prefers the October 1st plan. Is this sufficient to warrant the use of the injunctive processes of the Court? We think not.

. "The basis of injunctive relief in federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc. v. Westover, 1959, 359 U.S. 500, 506, 79 S.Ct. 948, 950, 3 L.Ed.2d 988.

■ It has become obvious to the district courts that to warrant the granting of an injunction on ground that irreparable injury is threatened, the injury contemplated must be real, not fancied; actual, not prospective; and, threatened, not imagined. Or to make it applicable to the facts, as the Court finds in the present matter, there must be an actual injury not a mere preference of which of two plans the union desires.

■ We come, therefore, to the final prayer of the complaint, namely, that the Court direct the Company to arbitrate the grievance filed with it on December 16, 1959, regarding the modification of the plan.

Since 1958 the Courts have almost uniformly held that the Court must determine as a preliminary matter whether the parties had contracted to refer the particular issue in dispute to arbitration.

Lodge No. 12, etc. v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467, 470, certiorari denied 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110:

"The courts have, with practical uniformity, held the question of arbitrability to be an issue for the courts—that is, the courts decide if the particular grievance is arbitrable under the terms of the collective bargaining contract."

And further:

"This is true even where the contract specifies that any controversy relating to the meaning or interpretation or application of the contract is arbitrable."

840

And further:

"We consider the general rule to be that a dispute between labor and management is arbitrable where the dispute is specifically contracted to be arbitrable or generally where the contract expresses a broad arbitration clause."

See, also, Refinery Employees Union, etc. v. Continental Oil Co., 5 Cir., 1959, 268 F.2d 447, 451, 452:

"When one of the parties needs the aid of a court, and asks the court for a decree ordering specific performance of a contract to arbitrate, we think that the court, before rendering such a decree, has the inescapable obligation to determine as a preliminary matter that the defendant has contracted to refer such issue to arbitration, and has broken this promise."

In the present matter the contract of July 21, 1958, among other things, provides:

"This plan will be established by the Company and its provisions will not be subject to collective bargaining. However, any complaint or grievance of the Association with respect to evaluation of the performance of an individual employee will be subject to provisions of the grievance procedure."

The July 2, 1959 agreement provides:

"The plan in its present form is not subject to collective bargaining and any revised provisions of the plan will not be subject to collective bargaining. However, any complaint or grievance of the Association with reference to evaluation of the performance of an individual employee will be subject to provisions of the grievance procedure."

It is clear that one cannot be compelled to arbitrate a matter unless they have contracted under certain circumstances to do so. It is abundantly clear here that the defendant-company not only did not agree to arbitrate such a dispute but specifically agreed that such plan would not be subject to the collective bargaining procedures, i. e., grievance and arbitration.

For the reasons herein expressed, the action will be dismissed.

This opinion shall constitute findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A., unless either counsel elects to present proposed findings and conclusions.

Counsel will prepare an appropriate order.