**CITY OF LEBANON and Senior Center of Lebanon Valley, Inc., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOP-MENT, Defendant,**

and

**DRZ Corporation, Intervening-Defendant.**

**Civ. No. 76–1016.**

United States District Court,
M. D. Pennsylvania.

Sept. 23, 1976.

Samuel G. Weiss, Jr., Lebanon, Pa., for plaintiffs.

Robert E. Richardson, U.S. Atty. Dept. of Justice, Washington, D.C., J. Phillip Krajewski, Asst. U.S. Atty., Harrisburg, Pa., for defendant, H.U.D.

James T. Reilly, Lebanon, Pa., for defendant, intervenor.

## MEMORANDUM

HERMAN, District Judge.

Before the court is an application by plaintiffs for a preliminary injunction restraining construction of a subsidized housing facility for the elderly at Reinoehle Street, in the northwestern section of Lebanon, Pennsylvania (hereinafter "City"). The project is to be erected by intervening defendant, DRZ Corporation (hereinafter "DRZ"), under a housing assistance agreement with the Department of Housing and Urban Development (hereinafter "HUD").[1]

Plaintiffs object to the project on the grounds that it is not in accordance with the City's Housing Assistance Plan,[2] and contend that HUD has acted arbitrarily and in excess of its authority in approving the project over the City's objection. Specifically, plaintiffs claim that the remoteness of the proposed housing from the commercial, cultural and medical facilities located in the central business district of the City will result in serious hardship to the elderly persons who will ultimately reside there.[3]

The standards which govern the issuance of a preliminary injunction in a case such as this have been stated as follows:

1) Has the plaintiff made a strong showing that it is likely to prevail on the merits?

2) Has the plaintiff shown that without such relief it will be irreparably injured?

3) Would the issuance of an injunction substantially harm other parties interested in the proceedings?

4) Where lies the public interest?[4]

For reasons discussed below, we find that plaintiffs have failed to make a convincing showing under any of the above criteria.

The scope of judicial review of agency actions of the type here complained of is an extremely narrow one. As set forth in *Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), our inquiry must be limited to 1) whether the agency has acted within the scope of its statutory authority, and 2) whether the agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[5] It

---

1. The arrangement between DRZ and HUD is pursuant to the Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, 42 U.S.C.A. §§ 1401, *et seq.* The procedure under which the present project has been approved is set forth at 24 C.F.R. part 880 (as revised, 41 F.R. 17468, April 26, 1976).

2. Submitted by the City and approved by HUD pursuant to 42 U.S.C. § 5304.

3. Both the Housing Assistance Plan and the applicable federal regulations (24 C.F.R. § 880.-112(g)) specify that housing for the elderly should be accessible to the amenities normally associated with the central business district.

4. *In re Penn Central Transp. Co.,* 457 F.2d 381, 384 (3d Cir. 1972); *Virginia Petroleum Jobbers Assoc. v. Federal Power Comm'n,* 104 U.S.App. D.C. 106, 259 F.2d 921 (1958).

5. 5 U.S.C.A. § 706(2)(A).

is beyond dispute that the commitment of HUD monies to the Reinoehle Street Project does not exceed the scope of the agency's statutory mandate. The Housing Act specifically authorizes arrangements such as this between HUD and private developers,[6] and plaintiffs do not dispute such authority. Thus, any attack on the validity of the actions of HUD in this case must be predicated upon either abuse of discretion or substantial violation of the prescribed statutory procedure.

Defendants have submitted extensive evidence of the procedures involved in reaching the decision to sanction the construction of subsidized housing on the Reinoehle Street site. Initially HUD advertised the availability of funding for federally assisted housing in the City of Lebanon and invited developers to submit proposals for the construction of such housing. A total of ten proposals were received for the development of seven sites throughout the City.[7] A complete investigation, including on-site inspections by HUD field personnel, was conducted for each proposal, evaluating each on the basis of such factors as desirability of site, compliance with environmental standards, performance of the developer and architect on other HUD-financed projects, ability to secure financing, and reasonableness of the proposed rents. After all investigations were completed, HUD personnel analyzed the results and ranked the proposals according to their aggregate scores for all the relevant factors. The study of the proposal by DRZ contained negative comment on the distance of the site from the downtown area. However, the DRZ proposal rated highly on most of the other factors considered, and all of the other proposed sites were deficient in one or more respects, with the result that the DRZ proposal was chosen as the most desirable. In recognition of the problems that the remote location of the site might cause for elderly residents, HUD required DRZ, as a condition of the acceptance of its proposal, to provide an hourly minibus service from the apartment house to downtown Lebanon.

■ We feel that the procedures outlined above show that the selection of the site for this project was the result of a reasoned consideration of all the relevant factors. HUD has demonstrated that its actions have not been arbitrary, but rather have been the result of a rational decision making process. This being established, we may not indulge in second-guessing HUD as to the wisdom of its decision. *Sabin v. Butz,* 515 F.2d 1061 (10th Cir. 1975); *Udall v. Washington, Virginia and Maryland Coach Co.,* 130 U.S.App.D.C. 171, 398 F.2d 765 (1968).

While it is apparent that plaintiffs could not succeed in voiding the agency's action as arbitrary or capricious, our analysis of the merits of the case must go one step further, for plaintiffs also allege that in approving development of the Reinoehle Street site over the City's objection, HUD has violated the procedural requirements of the Housing Act.[8] The specific violations complained of are, 1) that HUD failed to forward the development proposals to the City to afford an opportunity to object within ten days after their receipt,[9] and 2) having decided to proceed with the Reinoehle Street proposal despite the City's objection, HUD failed to provide a written statement of reasons for its decision.[10]

6. 42 U.S.C.A. § 1437f.

7. Four developers submitted proposals for construction on one site at 11th and Federal Streets. Six other sites, including Reinoehle Street, were each the subject of one proposal.

8. 42 U.S.C.A. § 1439.

9. HUD received the proposals on March 18, 1976 and notified the City by letter on April 21, 1976.

10. Upon receipt of an objection from the local government, HUD may nonetheless approve a proposal if it finds the proposal to be in accordance with the local housing assistance plan. Upon learning of the City's objection, Mr. James of the Philadelphia Office of HUD examined the proposal and found it to be consistent with the City's second year Housing Assistance Plan, which, though not yet in effect at the time this determination was made, had been submitted and approved by HUD. Examination of the Housing Assistance Plan shows that this determination was not wholly unreasonable.

To succeed in having the agency's commitment to the Reinoehle Street Project set aside on the basis of these procedural irregularities, plaintiffs would be required to show that the errors resulted in some prejudice to the plaintiffs' interests. *Denton v. Secretary Of The Air Force,* 483 F.2d 21 (9th Cir. 1973); *N. L. R. B. v. Selwyn Shoe Mfg. Corp.,* 428 F.2d 217 (8th Cir. 1970). No evidence appears in the record that either of the irregularities complained of substantially affected the ultimate decision to proceed,[11] and thus it appears that the possibility of plaintiffs using either as the basis of a successful attack on HUD's decision is remote.

Whether or not plaintiffs might ultimately mount a successful attack on the validity of the selection of the Reinoehle Street site, they have certainly failed to show that they will sustain irreparable harm if an injunction is not issued. That any injury whatever may result to the Senior Center of Lebanon Valley is highly doubtful. Nowhere has it been alleged that any of the Center's members contemplate living in the proposed structure; nor is there any indication that whatever inconveniences may befall those senior citizens who do take up residence there will be irremediable in nature.[12]

The City has likewise offered no more than conjecture as to the harm it will suffer. The City may end up with a housing project in what it considers to be less an ideal location, but this is not the sort of irreparable harm that has been recognized as sufficient to justify the granting of injunctive relief. *Virginia Petroleum Jobbers Assn. v. Federal Power Comm'n,* 104 U.S. App.D.C. 106, 259 F.2d 921 (1958); *Assoc. of Professional Engineering Personnel v. Radio Corp. of America,* 183 F.Supp. 834 (D.N. J.1960). Regardless of our view of the strength of plaintiffs' case on the merits, the absence of any evidence of irreparable harm would compel us to deny the injunction. *Commonwealth ex rel. Creamer v. United States Dept. Of Agriculture,* 469 F.2d 1387 (3d Cir. 1972).

As to the question of harm to other interested parties if the relief sought by plaintiffs is granted, the statement made by Judge Aldisert in a factually similar case is applicable here:

> "To state the potential of harm to the private developer because of construction delay or abandonment of the project is to acknowledge the obvious. But there is an even more sinister potential for harm. The record demonstrates the critical need for public housing for the elderly . . Depriving the elderly of this facility, or even delaying access thereto, is to me an important, if not the most important, consideration of these entire proceedings." *Croskey Street Concerned Citizens v. Romney,* 459 F.2d 109 (3d Cir. 1972).

11. It appears that the failure of HUD to provide a written statement was the result of a misunderstanding. The initial letter of objection from Mayor Heverling to HUD contained the following comment on the ten suggested sites:

> ". . . I have determined that these proposals are consistent with the goals outlined in our first and second year Housing Assistance Plans with the exception that the site at Reinoehle Street in the northwestern section of the City is considered too distant from commercial and public facilities normally associated with elderly housing."

HUD personnel interpreted this language to mean that any of the sites would be acceptable, including the Reinoehle Street site if the problem of its remoteness could be remedied. Accordingly, HUD approved the proposal of DRZ for the development of the Reinoehle Street site on the condition that DRZ agree to provide a minibus service for the building's residents. Upon being notified of the acceptance of the DRZ proposal, the City reiterated its objection in unmistakable terms. The response of HUD to this second objection was to schedule a meeting. The meeting was held on June 18, 1976, at which the City's concerns were discussed and the reasons for HUD's decision were fully explained. Thus it appears that, although the City did not receive formal notice of the decision, it was not without actual knowledge of the reasons therefor. That the City could show any prejudice to its interests arising from this situation seems unlikely.

12. The remoteness of commercial and social services, which is the only hardship which has been specifically alleged, would seem to be adequately remedied by the proposed minibus service.

While there is no direct evidence in the record of any elderly persons who are enduring extreme hardship while awaiting completion of the Reinoehle Street facility, the City's Housing Assistance Plan [13] indicates that the City now has more than 900 elderly residents living under inadequate conditions. We feel that the hardship that will result to these elderly citizens from delay in the construction of adequate housing is at least sufficient to offset any conceivable harm that may accrue to the City at large from the refusal of HUD to accept local recommendations as to site.

Perhaps the alacrity of HUD in committing itself to the construction of this project in the face of the City's objections treads close to the line between due exercise of discretion in the public interest and violation of the agency's statutory mandate. However, where the challenged agency action will indisputably meet an acute social need, and plaintiffs have shown no potential for substantial or permanent injury, either to themselves or to the public interest, we feel that an injunction should not issue.

Plaintiff's motion for a preliminary injunction will be denied.

This memorandum opinion shall be considered as the findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

---

**13.** Defendants' Exhibit "1–A".